38 C.C.P.A.(Patents)

## In re LOCKHART.

### No. 5773.

United States Court of Customs and Patent Appeals.

April 3, 1951.

Duell & Kane, and David S. Kane, New York City (Albert F. Bower, New York City, of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of all of the claims, Nos. 9, 11, and 14 to 21, inclusive, in appellant's patent application, Serial No. 635,928, filed December 19, 1945, for alleged improvements in hypodermic syringes.

The application relates to a hypodermic syringe designed to be inexpensive and therefore disposable and, at the same time, to operate as satisfactorily as the more expensive permanent hypodermic syringes. The disclosed syringe comprises a tubular body open at one end and closed at the other by an integral wall. Within the tubular body and in spaced concentric relation thereto, is a stationary plunger or thrust portion integrally united with the inner side of the closure wall and terminating in an edge short of the open end of the tubular body. A boss is provided integral with the exterior side of the closure wall, all of the foregoing structure being unitarily formed of a plastic material.

At the time the syringe is formed, a needle is permanently incorporated in the plastic body, passing longitudinally through the boss, the end wall, and the thrust portion, to thereby provide the desired liquid-tight seal. Relative movement between the needle and the syringe body is prevented by kinking, fluting, or roughening the needle, or by providing it with a projecting sleeve to intimately engage the surrounding plastic material. A cap to protect the needle and insure sterility is removably mounted over the needle and boss in frictional engagement with the latter. Small, thin, crushable fins may be provided extending in fillet fashion between the outside face of the closure wall and the boss, to bear against the inner face of the needle cover which may be mounted thereon, and

thus to frictionally retain it in position. Similar fins might be provided on the inside of the tubular body between the inner side of the closure wall and the inner side of the body for a reason presently to appear. The insertion of a conventional medicament ampule in the open end of the tubular body completes the syringe structure. As the operator applies pressure to the ampule's outer end it is moved into the tubular body, the plunger or thrust portion forcing the usual rubber ampule stopper into the ampule, causing the medicament to be ejected through the syringe needle, all in the conventional manner. If desired the ampule may be retained in the syringe body by merely forcing it inwardly until it makes frictional engagement with the fins provided within the closed end of the syringe body.

All of the appealed claims are product claims, claims 14, 15, 19, and 20 being generic, and claims 16, 17, 18, and 21 being species claims. Claims 17, 18, and 21 are drawn to non-elected species. Claims 9, 16, and 20 are considered representative and read as follows:

9. A hypodermic syringe including a tubular body having one end closed and the other end open, a needle extending transversely through the closed end of said body, said body being formed of a plastic material, and said body being formed with integral crushable fins adjacent its closed inner end whereby an ampule may be brought into engagement with said fins to be retained within said body.

16. A hypodermic syringe including a tubular body open at one end, a wall closing the opposite end thereof, a thrust portion extending from the inner face of said wall in the direction of such open end and spaced from the inner tube face, said body, end wall and thrust portion being formed of plastic material and integrally united, a needle extending from a point beyond said body transversely through said end wall and axially of said thrust portion to a point beyond the latter, said needle being kinked substantially in the zone of said end wall and the material of the latter engaging and enclosing said kink to permanently prevent any separative movements of said needle with respect to said body.

20. A hypodermic syringe including a tubular body open at one end and through which end a stoppered medicament-containing ampule is adapted to be inserted, a wall closing the opposite end of said body, a boss extending outwardly from said wall and beyond the body, said body, end wall and boss being formed of plastic material and integrally united, a double ended needle extending from a point beyond said boss through the same and said end wall into said tubular body to a point where its inner end may operatively coact with the stopper of the ampule introduced into said body, means forming a part of said needle, within the zone of said boss and end wall, to receive the material of said syringe and such material intimately engaging said means to permanently lock said needle against movement with respect to and separation from said body.

Claims 17, 18, and 21 were rejected in the Patent Office as being drawn to a non-elected invention. The remaining claims were rejected as defining no invention over the following references in combination:

Saffir                  2,153,594  April 11, 1939.
Everett (British)    505,212    May 8, 1939.

The Saffir patent shows a syringe which is generally similar to that shown by appellant except that the syringe body is made of glass and the needle is removable from the body, being held in position by a screw-threaded cap.

The patent to Everett shows a glass syringe barrel terminated in a plastic "nozzle" or boss over which a needle mounting is frictionally fitted. Either or both the "nozzle" and the inner surface of the needle mounting are grooved to provide a liquid-tight fit when forced together. The Everett patent was cited by the examiner to show that it was old to mold syringes or parts thereof of artificial resins. This much is admitted by appellant.

Appellant contends that the claimed syringe differs from the reference devices in the following particulars:

1. It possesses crushable retaining fins, and

2. The needle is permanently mounted in intimate non-slipping engagement with the material of the syringe barrel.

Claims 9 and 11, embodying the crushable fins, were rejected by the Primary Examiner as being unpatentable over Saffir combined with Everett. The examiner held that Everett taught the use of a plastic material in place of glass and that the use of crushable fins where desired was the mere exercise of skill and not invention. The Board of Appeals agreed as to the use of the plastic material and as to the unpatentability of the fins, but buttressed the fin rejection with a purported showing in the Everett patent that such structure was old.

The Everett patent states: When a mount such as is shown in Figs. 5 or 6 is fitted upon a plain conical nozzle, only the crests between the grooves make contact with the nozzle. The exertion of a little pressure suffices to deform these crests substantially, so that the extent of the contact is increased. By this means, a firm and a reliable liquid-tight fit is ensured. These effects are achieved even with a hard-metal mount and even if the taper in the mount is not an accurate complement of the taper on the nozzle. In such a case, the nozzle acts upon the crests between the grooves to produce its own fit. Indeed, the groove formations permit of mounts being fitted to nozzles to which they could not otherwise be fitted at all owing to disparity between their tapers. Furthermore, the same mount may even be used successively with syringes whose nozzles have not identical tapers.

· Appellant argues that the grooves are not fins, that a. fin is a projection or an appendage protruding *from* a surface and that the grooves of Everett are formed *into* the surface so that the tops of the grooves are even with the surface. It is our opinion that the difference is neither a substantial nor a patentable one. In the same sense that the tops of the grooves are with-in the surface on which they are formed, they are above a surface defined by their depths or roots, and they project from such surface. Obviously one skilled in the art who desired to produce a friction fit between a grooved boss and a cap would know that the diameter of the tops of the grooves must be slightly larger than the inner diameter of the cap in order that there be compression of the groove tops. Accordingly, we agree with the Board of Appeals that in view of the Everett patent no invention would be required to provide the Saffir device with crushable fins where desired.

Claims 14, 15, 16, 19, and 20 were rejected by the Primary Examiner as unpatentable over Saffir in view of Everett on the ground that there would be no invention in using synthetic plastics nor in securing the needle permanently within the molded structure by any suitable means such as roughening or specifically by kinking as claimed in claim 16. The board affirmed this rejection pointing out that "[k]inking, bending, roughening, projections, etc. are common everyday expedients to hold an embedded device in place and may be used wherever desired or necessary without the exercise of invention." We are of opinion that the board was correct.

In permanently molding his needle within the syringe body, and preventing relative movement by the use of roughened portions, kinks or projections, appellant has resorted to a technique known in many arts where a tube or rod is to be united with a moldable body, such as securing plastic handles to tools, eating utensils, etc. Broadly speaking appellant's needle itself constitutes a tool and the syringe body comprises a handle, so that molding the two together would hardly require invention in view of the notoriety of such a joinder.

We think it obvious that the claims in this case were properly rejected.

For the reasons stated, the decision of the board is *affirmed*.

Affirmed.